**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**CHRISTOPHER ALLEN BROGAN and**
**CARLINE FLORES BROGAN,**

**Plaintiffs,**

**v.** **CIVIL ACTION NO. 2:25-CV-0386**

**VANDERBILT MORTGAGE & FINANCE, INC., and ROBERT R. ELBON,**

**Defendants.**

## AMENDED COMPLAINT

1. This case arises out of the deceptive origination and closing of an exploitive mobile home financing. Plaintiffs were induced into the consumer credit financing of a mobile home by a bait and switch scheme involving deception, suppression and forgery without being afforded a meaningful opportunity to be presented in writing, review, and understand the affordability of the exploitive terms of the transaction. Plaintiffs bring this action to save their home and for other relief.

## PARTIES

2. Plaintiffs Carline Flores Brogan and Christopher Allen Brogan are a married couple residing at 545 W. Underwood Rd., Mt. Lookout, West Virginia. Mr. and Mrs. Brogan are very unsophisticated in home-secured financing. Ms. Brogan finished the 9th grade, and Mr. Brogan finished the 10th grade in formal schools.

3. Lender: Defendant Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt" or "VMF") is a corporation licensed to do business in West Virginia with its principal place of business within the corporate headquarters of Clayton Homes, Inc. ("Clayton"), at Clayton Road, Maryville, TN

37804. Within the Clayton headquarters are the financing affiliate, Vanderbilt, and the sales affiliate CMH Homes, Inc., all part of Clayton which is now a subsidiary of Berkshire Hathaway, Inc. Defendant Vanderbilt is liable for all claims and defenses arising out of the consumer credit transaction, a residential mortgage transaction under federal law, including those arising out of the acts of its agents and transaction affiliates.

4. Said Defendant is a "creditor" under TILA because said Defendant regularly extends credit—specifically, home secured loans—to consumers for personal, family, or household purposes, where the credit is subject to a finance charge or is payable by written agreement in more than four installments, and is subject to its prohibitions related to residential mortgage transactions.

5. Closing Agent. Defendant Robert R. Elbon is a notary with a residence in Dailey, Randolph County, West Virginia and mailing address at P.O. Box 235, Dailey, WV 26259. Defendant Elbon holds himself out to be the mayor of the town of Dailey, West Virginia, when in fact he was never the mayor, but rather a twenty year plus mobile home salesman for Clayton.

## STATEMENT OF FACTS

**Solicitation on June 4, 2022**

6. (a) On or about June 4, 2022, Plaintiff Carline Brogan was contacted by email by Clayton agent Mia Gillum from its lot in Buckhannon, West Virginia, offering the credit financing of a mobile home to the family. Apparently, through Vanderbilt she had heard of the family's misfortune in dealing another Clayton entity and offered to assist the family. She then emailed that "the first step towards purchasing your new home" was "a paperless option for a mortgage application" with link for the E-App with an access code to "login.e-app.claytonhomes.com," which was in fact a credit application to Vanderbilt. Gillum falsely

represented that copies of the application would be emailed to both of them and she would submit it to lenders.

(b) In fact, the completed credit application was never emailed to either Plaintiff, and the agent never submitted it to other lenders.

7. Thereafter, the Plaintiff Carline Brogan went to the site and completed the electronic Vanderbilt credit application. At the conclusion, an authorization for use of E-sign was required to submit the credit application. She completed the form, but Plaintiff Christopher Brogan did not.

**Bogus Electronic Signature Authorizations from the Brogans on June 8, 2022**

8. In the process of electronic credit application submission, there was an E-sign form to finalize submission of the credit application. Plaintiff Carline Brogan believed that only the credit application was being submitted remotely through this means. Plaintiff Christopher Brogan made no submission.

9. The federal E-sign Act permits parties to use of electronic records where every party has agreed to delivery of the documents by electronic means. *See* 15 U.S.C. § 7001(c)(1). It is designed to facilitate remote transactions where parties are not in the same location for contractual purposes.

10. (a) Prior to consenting to delivery of electronic records, each consumer must be given a clear and conspicuous statement of (1) any right or option to get the copy of the contract in non-electronic form, (2) the right to withdraw consent and the procedures for and consequences of doing so, (3) what transactions the consumer's consent applies to, (4) the procedures for updating the information needed to contact the consumer electronically; and (5) how, after consenting to electronic provision of the information, the consumer may request a paper copy and

whether any fee will be imposed. *See* 15 U.S.C § 7001(c)(1)(B). In order for electronic records to substitute for paper disclosures and documents pursuant to the E-Sign Act, each consumer must also be given a statement of the hardware and software requirements for access to and retention of electronic records. *See* 15 U.S.C § 7001(c)(1)(C)(i). Most importantly, for the consumer's consent to be valid, the consumer must consent "electronically . . . in a manner that reasonably demonstrates that the consumer can access information in the electronic format that will be used to provide the information that is subject of the consent." 15 U.S.C § 7001(c)(1)(C)(ii). This requirement to consent in a manner that demonstrates that the consumer can access the electronic record is a critical test of the validity of the consent. *See id.* This means that consumers must demonstrate, not just affirm, that they have access to the equipment and programs necessary to receive, open and read the relevant electronic documents. *See* Electronic Signatures in Global and National Commerce Act-Conference Report, 146 Cong Rec S 5215, 5224 (June 15, 2000).

(b) In implementing the above requirements of the Act, the Vanderbilt Agreement shown to Plaintiff Carline Brogan provided that it has to determine whether every E-sign participant has the requisite hardware and software:

> To successfully transact business with us electronically, you must have access to
>
> - A computer capable of accessing the internet and sending and receiving e-mail.
> - An active email address
> - A printer . . . and electronic storage . . . .
> - Microsoft Windows 7 or later versions, IOS 9 or later, Android 5 or later, or Apple Mac OS X Leopard 10.6 or later versions.
> - An internet browser that supports 128-bit encryption.

11. Neither Plaintiff was provided the mandated written statement of the basic E-sign rights, *i.e*. (i) the option to get a copy of a contract in non-electronic form, (ii) the right to withdraw consent, (iii) the transactions consent applies to, (iv) updating procedures, (v) paper copy requests. Plaintiff Christopher Brogan was presented with nothing.

12. (a) Vanderbilt made no effort to ascertain eligibility of the Plaintiffs for participation in an E-sign agreement.

(b) Plaintiffs did not have the hardware and software prerequisites to E-sign participation, *i.e.* a personal computer, a printer, or any of the software. Plaintiffs did not meet these requirements of the law in this context sufficient to permit the substitution of electronic documents for written documents for this transaction.

13. Despite lacking the prerequisites required by the E-sign Act, on or about June 8, 2022, Vanderbilt without Plaintiffs' knowledge "accepted" in its records Ms. Brogan's application for electronic records. Plaintiff Christopher Brogan made no application yet his "application" was "accepted" at the same time as his wife's. *See* 146 Cong Rec S 5215, 5224 ("Under the consent provisions, a consumer must affirmatively consent to the provision of records in electronic form, and there must be a reasonable demonstration that the consumer can access electronic records. . . . This provision, in combination with the simple fact that the use of electronic records by a consumer and right to contract generally are completely voluntary, should ensure that no consumer will be forced by any business to accept any electronic document that the consumer does not wish to receive.").

**Preliminary Loan Approval**

14. On June 9, 2022, Plaintiff Carline Brogan received a congratulations ("Congratulations. You did it") for having successfully completed the loan application process, and a "Preliminary Loan Terms Sheet," listing a loan eligibility for $126.909.76 with a down payment of $13,603, and monthly principal and interest ("P&I") payment of $1,152.34. The proposed terms were consistent with the Plaintiffs' affordability goal of keeping the amount financed in the $120,000s.

**Vanderbilt Does Not Realistically Evaluate the Affordability of the Loan for the Plaintiffs**

15. Before approving the Brogans' home-secured loan, Vanderbilt had the statutory duty to meaningfully evaluate the household's ability to make the monthly payments.

16. (a) Vanderbilt's purported determination used very unrealistic monthly expenses in evaluating the Brogans' loan.

(b) Vanderbilt did not consider many factors affecting the Brogan household income, including but not limited to, the prospects of continued long-distance employment, the cost of travel, the monthly utilities in Lookout, West Virginia, or the cost of food, clothing and health care for a five person household.

(c) Vanderbilt applied excessive terms that made it more difficult to repay the offered loan, *e.g.*, a high rate of interest.

17. (a) Vanderbilt's internal underwriting process artificially inflates the borrowers' ability to afford exploitive credit terms.

(b) The program subtracts food, healthcare, gasoline, and utility expenses; monthly recurring debt obligations; and the mortgage payment from the applicant's monthly income. Any positive amount (*i.e*. even one dollar is adequate) left over after this calculation is considered the applicant's net residual income and Vanderbilt evaluates it along with the applicant's assets, debts, and credit profile to determine the consumer's ability to repay the loan.

18. Vanderbilt's Living-Expense Estimate relies on unreasonable living-expense figures. When estimating an applicant's living expenses, Vanderbilt does not consider borrower characteristics or geographical variations in living expenses.

19. Vanderbilt's loan-underwriting policy permitted the company to rely on implausible living expenses to approve the exploitive rate included in the Brogan loan without sufficient

residual income to cover their likely living expenses after paying their significant debt obligations each month.

**Creation of the Credit Transaction on June 11, 2022**

20. On June 11, 2022, the Plaintiffs went to the Clayton location in Buckhannon, West Virginia, pursuant to the prior arrangement with and was shown homes by agent Mia Gillum. They explained that the maximum amount they could finance, after the approximate $14,000 available for downpayment, was in the $120,000s. They were eventually shown a 2021 model Adventure Mountain Lodge ("the doublewide") and told by Gillum that since it was a year-old model, it could be sold to them within their price range. Gillum represented to them that it was the last one and that the model would be discontinued. She then left them to review the home while she checked with the Lot manager about the price.

21. After Gillum returned, based upon the representations as to price and otherwise, and the affordability, the Plaintiffs agreed to the transaction. The amount was consistent with the Preliminary Loan Terms Sheet from Vanderbilt. The Plaintiffs tendered the $1000 in initial downpayment and were provided a receipt.

22. Prior to making payment, the Plaintiffs were not provided written disclosures of Total Sale Price, Amount Financed, Finance Charge or Annual Percentage Rate.

23. The market value of the year-old model at that time was approximately $135,000 and with basic set up costs of $5000-$7000, less a downpayment in the $14,000 range, the financed amount was within the perceived mid-$120,000s affordability range.

**Confirmation of Transaction Loan Approval on June 13, 2022**

24. On or about June 13, 2022, Plaintiffs received a Conditional Loan Approval with the same amount financed ($126,909.76) and the other loan terms set forth in the Preliminary Loan

Terms Sheet received on June 9, 2022. The Loan Approval stated, "This loan approval is valid for 116 days (through October 7, 2022)." These terms were consistent with their affordability goal.

25. (a) Subsequently, the Plaintiff Carline Brogan received telephone communications about increasing the loan amount but did not fully understand the impact of the term changes suggested, and there was a subsequent revised loan approval to her. However, given that the original loan approval was good through October 7, neither she nor Mr. Brogan were interested in any subsequent offers to increase the amount financed given their affordability goal and belief about the value of the home.

**The Plaintiffs' Closing at the Clayton Lot on August 1, 2022**

26. In an effort to create the appearance that the closing was being handled by an independent entity/notary, Defendant Vanderbilt retained (directly or indirectly) the Closing Agent and forwarded the closing documents to Defendant Elbon together with Instructions that stated as follows: "**You must facilitate the execution of all Lender documents for this loan closing.**"

27. (a) The Defendant Elbon was not, in fact, independent but a former sales agent for Clayton for over twenty years, the parent of Defendant VMF, and not the public official, thee mayor of Dailey WV.

(b) The $150 fee charged the Plaintiffs for "Attorney/Closing Fee" was NOT paid to an attorney but $125 to Defendant Elbon.

28. In fact (a) the closing was not conducted by Fieldchoice as represented in one closing document, (b) the closing was not conducted even by the Defendant Elbon, (c) the closing documents were forwarded by email to the Defendant Elbon (THE MAYOR41@GMAIL.COM), and he immediately shared his password with Clayton Lot Manager Tom Young to access the documents and perform the closing. Given their long-term relationship working for Clayton,

Elbon's practice was to allow Clayton employees to conduct all of the closings at the Buckhannon Clayton lot.

29. (a) The Brogan closing was conducted at the Clayton lot in Buckhannon beginning at approximately 1:00 p.m. on August 1, 2022.

(b) Present at the Closing were the Brogans, the notary Elbon, and Clayton Lot Manager Young, who directed the closing and did most of the speaking. He presented the documents on a screen across the room with the details difficult to view, with all written copies in front of the Manager sitting across the table from Plaintiffs. The process was rushed without their being afforded the opportunity to understand essential terms contained in electronic documents, a written copy of which was not presented to the Brogans for review and understanding of essential terms prior to consummation.

(c) Defendant Elbon's role at the closing consisted primarily of repeated reassurances to the Plaintiffs that they were getting a great deal and the benefits of dealing with Vanderbilt, and only secondarily of notarizing the certificate of title, power of attorney and other hand signed documents in the transaction. He had no role with the Note, Disclosure Statement and core essential transaction documents to which electronic signatures were later attached.

30. There was no practical reason to pursue the use of remote electronic signing of the documents containing the essential terms because all parties were present at closing at the Buckhannon lot.

31. The transaction details, including the total sale price, the amount financed, and the interest rate were critical details not known to or understood by the Plaintiffs due to the manner in which the closing was conducted.

32. There was no meaningful opportunity afforded the Plaintiffs to learn of many of the terms contained in the documents that were presented on a screen across the room.

33. No copies of the transaction documents and disclosures to which their electronic signatures were attached were provided to the Plaintiffs for their consideration during the screen presentation or prior thereto. Details not provided to the Plaintiffs in a form they could keep and review prior to execution contained (a) the total sale price, (b) the cash price, and (c) the annual percentage/interest rate.

34. The loan terms contained in the documents exceeded their face-to-face agreement/representations by almost $30,000 in amount financed. Had the Plaintiffs known at the time that they were being obligated to pay over $437,543 for this doublewide, they would have doubted affordability and declined the transaction.

35. The Plaintiffs never signed the Sales Agreement or Consumer Loan Note and Security Agreement.

36. After the Plaintiffs left the room to look at the home on the lot, they were informed by the salesperson that the documents would be prepared for them to take with them. Upon departing, Plaintiffs were handed a file with closing documents that they were not afforded the opportunity to understand at closing.

37. (a) No electronic copies of any transaction documents were ever emailed to the Plaintiff Carline Brogan, in July or August of 2022, notwithstanding a document in the closing package handed her after closing stating that the closing package was emailed following closing on August 1, 2022, at 2:10 PM.

(b) No emails containing electronic or other documents were ever emailed to Plaintiff Christopher Brogan during the entirety of the origination process.

(c) The first email he ever received from any Clayton entity was a job offer in or about October 2022.

**Damages and Discovery**

38. Expectedly, the Brogans eventually struggled to maintain their monthly payments on the loan. In or about December 2024 and early 2025, the Plaintiffs conveyed to Vanderbilt their hardship circumstances and requested loan modifications. The requests were rejected.

39. The Plaintiffs have been subjected to annoyance and inconvenience, fear of loss of home, emotional distress, damage to credit and economic loss.

40. The Plaintiffs discovered in May of 2025 that the Closing Agent was not independent of Clayton and its affiliates.

41. The Plaintiff Christopher Brogan discovered in early 2025 that Defendant Vanderbilt had created E-sign documentation in his name.

## CLAIMS FOR RELIEF

### COUNT I—UNCONSCIONABLE INDUCEMENT
### (Vanderbilt)

42. The Plaintiffs incorporate the preceding paragraphs by reference.

43. By letter dated November 27, 2024, Plaintiffs notified Vanderbilt of its violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") and provided Defendant with an opportunity to cure as required by W. Va. Code § 46A-5-108.

44. More than 45 have elapsed and Defendant Vanderbilt has failed or refused to cure the violations.

45. The Plaintiffs and the Defendants occupy dramatically unequal bargaining positions, including that:

(a) Plaintiffs are unsophisticated in home financing and have limited or no ability to deal with comprehension of financing terms especially in the context of electronic documentation.

(b) Defendant VMF is a large national lender engaged in the business of making home secured loans.

(c) The Closing Agent is sophisticated in financial matters and, on information and belief, regularly participates inthe closings for the consumer credit financing of Clayton manufactured homes.

46. The Defendants deceptively induced the Plaintiffs into the exploitive financing by a bait and switch scheme whereby Defendants misrepresented the financing terms. and unilaterally imposed exploitive rates and terms on the Plaintiffs.

47. The Defendants suppressed essential written terms of the transaction by failing to provide detailed written disclosures of essential terms in a form they could review prior to consummation, and failed to comply with the E-sign Act before attaching electronic signatures as required by federal law. The Defendants made use of electronic documentation when all the parties were present at the closing as a means to avoid meaningful paper disclosure and opportunity for review and consideration of credit terms.

48. Defendants did not utilize accurate data to underwrite the Plaintiffs' ability to repay in the long term.

(a) The contract was formed without a true meeting of minds through a residential mortgage loan closing inconsistent with state and federal law:

(b) The closing was not conducted by an independent professional;

(c) The process allowed for suppression of the essential terms of the transaction by the failure to provide a copy of detailed written disclosures the consumer could keep and review prior to execution;

(d) There was no review of federally mandated disclosures;

(e) The closing was rushed and Plaintiffs' electronic signatures were affixed without their consent or agreement; and

(f) The circumstances of the closing made it such that the true financial impact and unaffordability of the transaction were unknown to Plaintiffs and came as an unfair surprise.

(g) The financing transaction was induced by failure to afford a meaningful opportunity to understand the impact of the transaction. The contract at issue was adhesive and drafted by said Defendants and their agents.

(h) The contracts contained unfair terms, which came as a surprise to the Plaintiffs, including but not necessarily limited to excessive finance charges and an exploitive rate of interest.

(i) The loan was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct and therefore is unenforceable.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) A declaration that the transaction was induced by unconscionable conduct and/or contained unconscionable terms, and constituted unconscionable contract;

(b) Actual damages and civil penalty for each violation of the WVCCPA pursuant to W. Va. Code § 46A-5-101, -106;

(c) Reasonable attorney's fees and the costs of this action; and

(d) All other relief the Court deems equitable and just.

**COUNT II—FRAUD AS A DEFENSE TO CONTRACT**
**(Vanderbilt)**

49. The Plaintiffs incorporate the preceding paragraphs by reference.

50. As hereinbefore alleged, Defendants engaged in a classic fraudulent "bait and switch" scheme by intentionally initiating the transaction by misrepresenting and suppressing the financing terms of the transaction.

51. These misrepresentations and suppressions involved essential considerations of cost and affordability – *i.e.*, they were material – and induced the Plaintiffs into the transaction.

52. Plaintiffs reasonably relied upon the Defendants' misrepresentations about the essential terms in entering into the transaction.

53. The Plaintiffs were damaged by proceeding with the transaction upon their reliance upon the representations of the Defendants.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) A declaration that the transaction was induced by fraudulent and deceptive conduct; and

(b) All appropriate equitable relief to which the Plaintiffs may be entitled, including voiding the loan and restitution.

**COUNT III—FORGERY AND UNENFORCEABLE LOAN**
**(Vanderbilt)**

54. Plaintiffs incorporate the preceding paragraphs by reference.

55. Defendant Vanderbilt affixed Plaintiffs' signatures to agreements without their consent. As hereinbefore alleged, Plaintiffs agreed to terms initially offered to them in the preliminary disclosures and did not provide legally valid consent for their electronic signatures to be affixed to documents.

56. Defendant Vanderbilt's affixing the Plaintiffs electronic signature to documents to which Plaintiffs did not consent nor agree constitutes forgery.

57. The Plaintiffs were damaged as a proximate result of the Defendants' forgery when they incurred dramatically increased debt and finance charges for the purchase of the subject manufactured home.

**WHEREFORE**, Plaintiffs respectfully request all appropriate legal and equitable relief.

**COUNT IV – FRAUD**
**(Closing Agent)**

58. The Plaintiffs incorporate the preceding paragraphs by reference.

59. The Closing Defendant suppressed from the Plaintiffs that the attending Closing Agent was not independent from the Clayton Defendants and affiliates, but in fact was in a close relationship with the Clayton Defendants.

60. The suppression and misrepresentations therewith were intentional and material, and done with the purpose of enabling positive representations concerning the substance of the transaction during the closing process.

61. Plaintiffs reasonably relied on the independence of the closing agent's representations in being induced into the transaction.

62. Plaintiffs were damaged by entering into the transaction at exploitive terms.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) A declaration that the transaction was induced by fraud;

(b) Actual damages and punitive damages;

(c) Reasonable attorney's fees and the costs of this action; and

(d) All other relief the Court deems equitable and just.

**COUNT V – NEGLIGENCE**
**(Closing Agent)**

63. The Plaintiffs incorporate the preceding paragraphs by reference.

64. The Closing Defendant owed the Plaintiffs a duty of care to conduct the closing in a reasonably prudent and impartial manner.

65. Closing Defendant breached the duty of care to the Plaintiffs, including but not limited to the duty of impartiality and duty to ensure that the Plaintiffs agreed and were informed of the essential loan terms.

66. Plaintiffs suffered damages as a proximate result of Closing Defendant's breach of the duty of care.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) Actual damages and punitive damages;

(b) Reasonable attorney's fees and the costs of this action; and

(c) All other relief the Court deems equitable and just.

**COUNT VI– FRAUD**
**(Vanderbilt)**

67. Plaintiffs incorporate the preceding paragraphs by reference.

68. Defendant Vanderbilt suppressed from the Plaintiff Christopher Brogan that it was creating a bogus E-sign agreement in his name. Defendant Vanderbilt fraudulently forged Mr. Brogan's electronic signature to documents to which he did not consent or agree.

69. Defendant fraudulent acts were intentional with the purpose of suppressing the major terms of the transaction.

70. The fraudulent acts of the Defendant were material to his proceeding with the transaction.

71. Plaintiff reasonably relied on the Defendant to conduct the transaction consistent with law and affording him a meaningful opportunity to understand major terms.

72. Plaintiff was damaged by the acts of the Defendant by entering to the transaction under misapprehension of its essential terms.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) A declaration that the transaction was induced by fraud as to Christopher Brogan;

(b) Actual damages and punitive damages;

(c) Reasonable attorney's fees and the costs of this action; and

(d) All other relief the Court deems equitable and just.

**PLAINTIFFS DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Plaintiffs,**
**CARLINE FLORES BROGAN**
**and CHRISTOPHER ALLEN**
**BROGAN,**
**By Counsel:**

*<u>/s/ Daniel F. Hedges</u>*
Daniel F. Hedges (WVSB # 1660)
MOUNTAIN STATE JUSTICE, INC.
1217 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-3144
Facsimile: (304) 344-3145
***COUNSEL FOR PLAINTIFFS***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**CHRISTOPHER ALLEN BROGAN and**
**CARLINE FLORES BROGAN,**

**Plaintiffs,**

**v.** **CIVIL ACTION NO. 2:25-CV-0386**

**VANDERBILT MORTGAGE & FINANCE, INC.,**
**FIELDCHOICE, LLC, and ROBERT R. ELBON,**

**Defendants.**

**CERTIFICATE OF SERVICE**

I, Daniel F. Hedges, counsel for Plaintiffs do hereby certify that I have filed the Amended Complaint this the 15th day of December, 2025 by the Court's E-Filing system which will send notification of such filing to the following:

Carrie Goodwin Fenwick
Goodwin & Goodwin, LLP
cgf@goodwingoodwin.com
Counsel for Defendant Vanderbilt Mortgage & Finance, Inc.

Tricia A. Martino
John W. Burns
Gordon Rees Scully Mansukhani
tmartino@grsm.com
jburns@grsm.com
Counsel for Robert R. Elbon

James C. Lester
Maynard Nexsen PC
jlester@maynardnexsen.com
Counsel for Vanderbilt Mortgage & Finance, Inc.

*/s/ Daniel F. Hedges*
Daniel F. Hedges (WVSB # 1660)
MOUNTAIN STATE JUSTICE, INC.