**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CHRISTOPHER ALLEN BROGAN, et al.,

          Plaintiffs,

v.                                  CIVIL ACTION NO.   2:25-cv-00386

VANDERBILT MORTGAGE & FINANCE,
INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

This Court has reviewed *Defendant Robert R. Elbon's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)* (Document 40), the *Memorandum of Law in Support of Defendant Robert R. Elbon's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)* (Document 41), the *Plaintiffs' Response to Defendant Elbon's Motion to Dismiss* (Document 46), *Defendant Robert R. Elbon's Reply to Plaintiff's Response to Motion to Dismiss* (Document 50), *Defendant Robert R. Elbon's Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(b)(6)* (Document 75), and the *Memorandum of Law in Support of Defendant Robert R. Elbon's Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(b)(6)* (Document 76), as well as the *Amended Complaint* (Document 62).   For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiffs, Christopher Allen Brogan and Carline Flores Brogan, initiated this action in the Circuit Court of Nicholas County, West Virginia, on or about May 9, 2025.  They named as Defendants Vanderbilt Mortgage & Finance Inc, FieldChoice, LLC,[1] and Robert R. Elbon. The Defendants removed the action to this Court on June 18, 2025.

The Plaintiffs are a married couple and are unsophisticated in home secured financing, with Ms. Brogan having completed the 9th grade and Mr. Brogan having completed the 10th grade. Defendant Vanderbilt, a subsidiary of Clayton Homes, Inc. ("Clayton"), is a creditor that regularly extends credit, in the form of home secured loans, to consumers for personal, family, or household purposes.  Defendant Elbon is a closing agent and notary, who resides in Daily, West Virginia, and "holds himself out to be the mayor of Daily, West Virginia, when in fact he was never mayor, but rather a twenty year plus mobile home salesman for Clayton."  (Am. Compl. at ¶ 5.)

The Plaintiffs allege that they were the victims of a deceptive origination and closing of an exploitive mobile home financing transaction.  Specifically, they allege that they "were induced into the financing and purchase of a mobile home by a bait and switch scheme involving deception, suppression and forgery without being afforded a meaningful opportunity to know or understand the exploitive terms of the bogus transaction."  (Am. Compl. ¶ 1.)  On June 9, 2022, Plaintiff Caroline Brogan received a Preliminary Loan Terms Sheet from Defendant Vanderbilt listing a loan eligibility for $126,909.76 with a down payment of $13,603, and a monthly principal and interest payment of $1,152.34.  On June 11, 2022, the Plaintiffs agreed to purchase a 2021

---

[1] Defendant FieldChoice, LLC was dismissed by a stipulation between it and the Plaintiffs on or about July 7, 2025. However, FieldChoice, LLC was named as a third-party defendant after this Court granted Defendant Vanderbilt's motion to file a third-party complaint on January 16, 2026.

Adventure Mountain Lodge mobile home after it was shown to them at Clayton's sales lot in Buckhannon, West Virginia.   The Plaintiffs received a Conditional Loan Approval on June 13, 2022, containing the same amount to be financed ($126,909.76) and other terms set forth in the Preliminary Loan Terms Sheet, which were consistent with the Plaintiffs' affordability goals.

To make it appear as if the closing was being handled by an independent notary, Defendant Vanderbilt retained Defendant Elbon and forwarded him the closing documents with specific instructions for him to facilitate the execution of the documents at the closing.   However, Defendant Elbon was not an independent notary, but a former sales agent who had worked over twenty years for Clayton, the seller and parent company of Defendant Vanderbilt, which the Plaintiffs did not discover until May 2025.   Defendant Elbon did not conduct the closing but rather provided access to the closing documents to the Clayton lot manager to conduct the closing. Defendant Elbon's role at the closing primarily consisted of reassuring the Plaintiffs that they were receiving a great deal and benefits by dealing with Defendant Vanderbilt, and only secondarily notarizing some documents.

The closing was conducted on August 1, 2022, at approximately 1:00 p.m., at Clayton's lot in Buckhannon, where the lot manager presented the documents on a screen that made it difficult for the Plaintiffs to view the details.   The Plaintiffs were not "afforded the opportunity to [learn and] understand the essential terms" due to the process being rushed.   (Am. Compl. at ¶ 29(b), 32.)   Due to the way the closing was handled, "[t]he transaction details, including the total sale price, the amount financed, and the interest rate were critical details not known to or understood by the Plaintiffs."   (*Id.* at ¶ 31.)   The Plaintiffs were never provided any "copies of the transaction documents and disclosures to which their signatures were attached," nor were they

3

provided documents to keep and review prior to the execution including the total sales price, the cash price, and the APR.  (*Id.* at ¶ 33.)  One of the terms contained in the documents was a $30,000 increase in the amount financed which exceeded the agreement and representations made to the Plaintiffs.  Had the Plaintiffs known that they would be obligated to pay over $437,543, they would have declined the transaction.  The Plaintiffs did not intend to agree to the Sales Agreement or Consumer Loan Note and Security Agreement, and their consent to attach their electronic signatures to the documents was only intended to extend to the previous terms contained in the preliminary loan disclosures.

On December 15, 2025, the Plaintiffs filed an amended complaint asserting the following claims: Count I – Unconscionable Inducement (Vanderbilt),[2] Count II – Fraud as a Defense to Contract (Vanderbilt), Count III – Forgery and Enforceable Loan (Vanderbilt), Count IV – Fraud (Closing Agent), Count V – Negligence (Closing Agent), and Count VI – Fraud (Vanderbilt).

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

---

[2] In their original complaint, the Plaintiffs also asserted unconscionable inducement against Defendant Elbon.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."   *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'"   *Francis,*

5

588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."  *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendant Elbon seeks to dismiss the Plaintiffs' fraud and negligence claims against him. He argues that the Plaintiffs have failed to demonstrate any misconduct on his part in his role as a notary and that the Plaintiffs' fraud and negligence claims are time-barred.   Further, Defendant Elbon argues the Plaintiffs have failed to sufficiently plead their fraud and negligence claims under Rule 9(b) and Rule 8(a) respectively.   As to the fraud claim, Defendant Elbon contends that the Plaintiffs failed to identify him as the one who engaged in the fraud due to their use of different terms, such as "Closing Defendant," "Closing Agent," and "closing agent." (Def.'s Mem. at 15, citing Am. Compl. at ¶¶ 59, 61.)   He also contends that the Plaintiffs have failed to identify with particularity the statements or omissions that constitute fraud, the materiality or falsity of such representations or omissions, the manner in which they were reasonably relied upon, or what Defendant Elbon obtained as a result.   As to the negligence claim, Defendant Elbon asserts that the Plaintiffs merely asserted formulaic and conclusory recitations of the elements of negligence.   In sum, Defendant Elbon argues that the Plaintiffs have failed to allege facts sufficient to establish their claims of fraud and negligence.   Further, he contends that he had no duty as a notary to disclose that he was a former Clayton employee or to ensure that the Plaintiffs

understood the contents of the closing documents.   As to the fraud claim, he contends that even if he did have a duty to disclose, the Plaintiffs cannot demonstrate reasonable reliance on the omission related to his former employment with Clayton given that the Clayton lot manager conducted the closing.

The Plaintiffs argue that they sufficiently pled their fraud and negligence claims. They contend that they set forth the facts underlying their fraud and negligence claims in two and half pages of the complaint, alleged the elements required to establish fraud and negligence and argue that their fraud and negligence claims are not time-barred pursuant to the discovery rule.[3]

Upon review of the *Amended Complaint,* the Court observes that Count IV alleging fraud and Count V alleging negligence against the "Closing Agent" are the counts subject to the current motion.

### A.  Fraud

To establish fraud, the West Virginia Supreme Court has provided:

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syl. pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1981).   Under Fed. R. Civ. P. 9(b), a plaintiff is required to "state with particularity the circumstances constituting fraud."   Fed. R. Civ. P. 9(b).   The circumstances which a plaintiff must plead with particularity "are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"   *McCauley v. Home Loan Inv. Bank*, F.S.B.,

---

3 The Court cannot determine from the face of the Amended Complaint that the claims are time-barred and, therefore, will not discuss this argument further.

710 F.3d 551, 559 (4th Cir. 2013) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).   In other words, a plaintiff is required to plead "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022).   "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

The Fourth Circuit has adopted a relaxed Rule 9(b) standard for allegations of fraud by omission or concealment.   *See Corder v. Antero Res. Corp.*, 57 F.4th 384, 401-02 (4th Cir. 2023). A plaintiff alleging fraud by omission or concealment "may rely on information and belief without running afoul of Rule 9(b)," but "they must state the factual allegations that make their belief plausible."  *Id.* at 402.   While the Fourth Circuit has adopted a relaxed standard for such allegations of fraud, such a "standard 'does not eliminate the particularity requirement.'"  *Id.* (quoting *Devaney v. Chester*, 813 F.2d 566, 569 (4th Cir. 1987)); *see also id.* at 403 (explaining that Rule 9(b) requires a plaintiff to "allege a particular starting point," as well as identify defendants who committed the fraudulent omissions or concealment with particularity "to enable a particular defendant to determine with what it is charged," or "explain why [the plaintiff] lack[s] sufficient information to do so").

The Plaintiffs allege that Defendant Elbon is a notary who was retained by Defendant Vanderbilt to "create the appearance that the closing was being handled by an independent entity/notary" and identify him as the "Closing Agent." (Am. Compl. at ¶ 5, 26.)   They further allege that Defendant Elbon was not independent but a former long-time sales agent of Clayton,

and that they did not discover his lack of independence until May 2025.   The Plaintiffs allege that the closing occurred at the Clayton Buckhannon lot on August 1, 2022, at approximately 1:00 p.m., and that the closing was conducted by the Clayton Lot Manager, rather than Defendant Elbon, whose role primarily consisted of "repeated reassurances to the Plaintiffs that they were getting a great deal and the benefits of dealing with Vanderbilt," as well as notarizing closing documents. (*Id.* at ¶ 29.)   In Count IV of the Amended Complaint, the Plaintiffs assert that "[t]he Closing Defendant suppressed from the Plaintiffs that the attending Closing Agent was not independent from the Clayton Defendants and affiliates, but in fact was in a close relationship with the Clayton Defendants."   (*Id.* at ¶ 59.)   They further assert that "[t]he suppression and misrepresentations therewith were intentional and material, and done with the purpose of enabling positive representations concerning the substance of the transaction during the closing process," that they "reasonably relied on the independence of the closing agent's representations in being induced into the transaction," and that they "were damaged by entering into the transaction at exploitive terms." (*Id.* at ¶¶ 60-62.)

At first glance, there appears to be ambiguity surrounding "who" the Plaintiffs are claiming engaged in the alleged fraud under Count IV of the Amended Complaint.   Rather than explicitly identify "who," the Plaintiffs instead use terms such as "Closing Defendant," "Closing Agent," and "closing agent."   (*Id.* at ¶¶ 59, 61.)   Although the Plaintiffs refer to Defendant Elbon as the "Closing Agent," (*Id.* at ¶ 5), the use of different terms, such as "Closing Defendant," could indicate that the Plaintiffs are referring to different individuals, thus creating ambiguity surrounding "who" engaged in the alleged fraud.

However, despite the ambiguity surrounding "who," "courts are more likely to overlook deficiencies in the "who" requirement under Rule 9(b) if the plaintiff specifically identifies the content of the misrepresentations and the circumstances surrounding them." *Brainchild Surgical Devices, LLC v. CPA Global Limited*, No. 1:21-cv-554 (RDA/JFA), 2023 WL 159769, at *5 (E.D. Va. Jan. 11, 2023). The Plaintiffs have alleged sufficient information pertaining to the alleged omission and the surrounding circumstances to enable Defendant Elbon to determine that he is the one being charged with the alleged fraud. Specifically, the Plaintiffs alleged particular facts about "what" the alleged fraud consisted of, mainly the suppression of information related to Defendant Elbon being a former, long-time Clayton sales agent to make it appear as if the closing was being handled by someone who was independent. The Plaintiffs further alleged particular facts about "when" and "where" the alleged fraud occurred by alleging that it took place during the closing, which Defendant Elbon attended, at the Buckhannon Clayton lot at around 1:00 p.m. on August 1, 2022. They also alleged particular facts about "how" the alleged fraud occurred by alleging that the "Closing Agent suppressed from the Plaintiffs that the attending Closing Agent was not independent from the Clayton Defendants," which "enabl[ed] positive representations concerning the substance of the transaction," consisting of "repeated assurances to the Plaintiffs that they were getting a great deal and the benefits of dealing with Vanderbilt," and that they "reasonably relied on the independence of the closing agent's representations in being induced into the transaction." (Am. Compl. at ¶¶ 29(c), 59-61.) The Plaintiffs, therefore, have alleged particular facts related to the what, when, where, and how, and together, these alleged facts are sufficient to identify Defendant Elbon as the "who", given that he is the subject of the allegedly suppressed information

10

which he would have known when he attended the closing.[4] *Cf. Lacey v. Mercedes-Benz USA, LLC*, No. 24-2770-TDC, 2025 WL 2597118, at *7 (D. Md. Sept. 5, 2025) (finding that the plaintiff did not allege fraudulent omission or concealment with particularity because she failed to plead sufficient information surrounding "the circumstances of that misconduct, including the identity of the perpetrator, the timing of the misconduct, and the circumstances of that action or inaction").

Defendant Elbon argues that the Plaintiffs fail to identify the specific statements or omissions, as well as specify the manner in which the Plaintiffs reasonably relied upon them. However, with particularity, the Plaintiffs allege that Defendant Elbon omitted that he was not independent but rather a former Clayton employee, and that they relied upon "the independence of. . . [Defendant Elbon's] representations in being induced into the transaction" with Defendant Vanderbilt. (Am. Compl. at ¶ 61.)

Although Defendant Elbon further argues that the Plaintiffs failed to allege what he obtained from his alleged omission, the Plaintiffs allege that the "suppression and misrepresentations[5] therewith were intentional and material and done for the purpose of enabling positive representations concerning the substance of the transaction during the closing process." (Am. Compl. at ¶ 60.) Based on this allegation and the allegation that Defendant Elbon was a long-time employee of Clayton, a reasonable inference can be drawn that he engaged in the alleged fraud to obtain a benefit for his former employer by facilitating the transaction for Defendant Vanderbilt, a subsidiary of Clayton.[6] Moreover, given that the Plaintiffs' fraud claim relates to

---

[4] Although the Clayton lot manager also attended the closing, the Plaintiffs do not assert a claim against him, and because Defendant Elbon is the subject of the omission, and such information would have been known to him, it can be reasonably inferred that the fraud claim is asserted against him.

[5] Although the Plaintiffs assert that Defendant Elbon also engaged in misrepresentations, it appears, based on the allegations asserted under Count IV, that they are primarily asserting a fraudulent omission or concealment claim.

[6] Defendant Elbon also received a $125 fee for facilitating the transaction, but that fee alone would likely not be sufficient to demonstrate what he obtained from the alleged fraud given that it is a regular service fee. *See Schmidt*

fraudulent omission or concealment, the Plaintiffs may lack information pertaining to what Defendant Elbon himself received. *See Corder*, 57 F.4th at 402 (explaining that in fraudulent omission or concealment cases, "it is well-nigh impossible for plaintiffs to plead all the necessary facts with particularity, given that those facts will often be in the sole possession of the defendant").

However, even if the Plaintiffs have pled their fraud claim against Defendant Elbon with the requisite particularity to meet the Fourth Circuit's relaxed Rule 9(b) standard for fraud by omission or concealment, the claim still does not withstand legal scrutiny. The West Virginia Supreme Court has further defined fraud to "include[] all acts, omissions, and concealments which involve a breach of a legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another." *Smith v. First Cmty. Bancshares, Inc.*, 575 S.E.2d 419, 432 (W. Va. 2002) (quoting *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 682 (W. Va. 1981). The West Virginia Supreme Court has also explained that the person alleged to have engaged in fraudulent omission or concealment must have had a duty to disclose, as well as knowledge of the omitted or concealed facts and an intent to mislead or defraud. *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 654 (W. Va. 2012) ("Fraudulent concealment involves the concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud."). This is the nature of the claim Plaintiffs have alleged here.

The Plaintiffs have failed to allege facts that demonstrate Defendant Elbon had a duty to disclose that he was not independent but rather a former Clayton employee. As previously

---

*v. Fleet Bank*, No. 96 Civ. 5030(AGS), 1998 WL 47827, at *6 (S.D. N.Y. Feb. 4, 1998) ("To allege motive under Rule 9(b), a plaintiff must show a benefit to the defendant beyond 'the receipt of normal compensation for professional services rendered.'" (quoting *Friedman v. Arizona World Nurseries*, 730 F.Supp. 521, 532 (S.D. N.Y. 1990))).

mentioned, the Plaintiffs allege that Defendant Elbon is a notary and identify him as the "Closing Agent." However, the Court has found no West Virginia Supreme Court precedent recognizing that a notary or a closing agent has an affirmative duty to disclose. *See Bennett v. Lending Solutions Inc.*, No. 2:10-cv-01201, 2011 WL 4596973, at \*11 (S.D. W. Va. Sept. 30, 2011); *May v. Nationstar Mortg., LLC*, No. 3:12-CV-43, 2012 WL 3028467, at \*6 (N.D. W. Va. July 25, 2012). Without the legal duty to disclose the alleged concealed facts, Plaintiffs' fraud claim, based on omission or concealment, cannot stand and must be dismissed.

### B. Negligence

The basic elements of a negligence claim are duty, breach of that duty, causation, and damages. "In order to establish a negligence claim in West Virginia, '[a] plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff.'" *Cline v. 7–Eleven, Inc.,* 2012 WL 5471761 at \*5 (N. D. W.Va. Nov. 9, 2012) (citing *Neely v. Belk, Inc.,* 668 S.E.2d 189, 197 (W. Va. 2008)). In Count V of the *Amended Complaint*, the Plaintiffs allege that Defendant Elbon owed them a "duty of care to conduct the closing in a reasonably prudent and impartial manner." (Am. Compl. at ¶ 64.)

As with their fraudulent omission or concealment claim, the Plaintiffs are unable to demonstrate that Defendant Elbon, whether acting as a notary or a closing agent, had a duty, specifically, to conduct the closing in a reasonably prudent and impartial manner. *See Bennett*, No. 2:10-cv-01201, 2011 WL 4596973, at \*11 (S.D. W. Va. Sept. 30, 2011) (finding no West Virginia Supreme Court authority recognizing "an affirmative duty for a closing agent to explain the terms of a home loan and to ensure that the borrower understands the essential terms of the

13

transaction"); *May*, No. 3:12-CV-43, 2012 WL 3028467, at *6 (N.D. W. Va. July 25, 2012) (explaining that the defendant providing "no explanation of the documents actually supports the conclusion that he rendered services solely in his role as a notary" (citing *Bennett*, No. 2:10-cv-01201, 2011 WL 4596973, at *11 (S.D. W. Va. Sept. 30, 2011))). Without this legal element, the Plaintiffs' negligence claim against Defendant Elbon must also be dismissed.

CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Robert R. Elbon's Motion to Dismiss the Amended Complaint Pursuant to F.R.C.P. 12(b)(6)* (Document 75) be **GRANTED** and that Defendant Elbon be **DISMISSED** from this case. The Court further **ORDERS** that *Defendant Robert R. Elbon's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)* (Document 40) be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        March 26, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA