**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

VANDERBILT MORTGAGE & FINANCE, INC.,

Third-Party Plaintiff,

v. CIVIL ACTION NO. 2:25-cv-00386

FIELDCHOICE, LLC,

Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Vanderbilt Mortgage and Finance, Inc's Motion for Partial Summary Judgment Against FieldChoice, LLC* (Document 101), *Vanderbilt Mortgage and Finance, Inc.'s Memorandum of Law in Support of Motion for Partial Summary Judgment Against FieldChoice, LLC* (Document 102), *FieldChoice's Response in Opposition to Vanderbilt's Motion for Partial Summary Judgment* (Document 107), and *Vanderbilt Mortgage and Finance, Inc.'s Reply Brief in Support of Motion for Partial Summary Judgment Against FieldChoice, LLC* (Document 108).

In addition, the Court has reviewed *FieldChoice's Motion for Summary Judgment* (Document 104), *FieldChoice's Memorandum of Law in Support of Motion for Summary Judgment* (Document 105), and *Vanderbilt Mortgage and Finance, Inc.'s Memorandum of Law in Opposition to FieldChoice, LLC's Motion for Summary Judgment* (Document 106), as well as all relevant documents. For the reasons stated herein, the Court finds that Vanderbilt's motion should be denied and FieldChoice's motion should be granted in part and denied in part.

## FACTUAL BACKGROUND

Christopher Allen Brogan and Carline Flores Brogan initiated this action in the Circuit Court of Nicholas County, West Virginia, on or about May 9, 2025, naming as defendants Vanderbilt Mortgage & Finance Inc, FieldChoice, LLC, and Robert R. Elbon. They alleged that they were the victims of a deceptive origination and closing of an exploitive mobile home financing transaction where they "were induced into the financing and purchase of a mobile home by a bait and switch scheme involving deception, suppression and forgery without being afforded a meaningful opportunity to know or understand the exploitive terms of the bogus transaction." (Am. Compl. ¶ 1.) Vanderbilt removed the action to this Court on June 18, 2025.

FieldChoice moved to dismiss the Brogans' claims against it after the case was removed and was voluntarily dismissed by the Brogans with prejudice on July 7, 2025.[1] On October 30, 2025, Mr. Elbon moved to dismiss. The Brogans filed a motion to amend their complaint. Mr. Elbon moved to dismiss the amended complaint, and this Court granted the motion on March 26, 2026, finding that the Brogans failed to allege facts demonstrating that Mr. Elbon had any duty to disclose or conduct the closing in a reasonably prudent and impartial manner.

On January 16, 2026, this Court granted an unopposed motion by Vanderbilt for leave to file a third-party complaint. In it, Vanderbilt named FieldChoice as a Third-Party Defendant and asserted the following claims: Count I – Breach of Contract – Obligation to Defend Against Third-Party Defendant Fieldchoice, LLC, Count II – Declaratory Judgment – Obligation to Defend Against Third-Party Defendant Fieldchoice, LLC, and Count III – Negligence Against Third-Party

[1] Following FieldChoice's dismissal, Vanderbilt moved for a stay because of arbitration between the Brogans and CMH Homes, Inc., but this Court denied Vanderbilt's motion on September 19, 2025, finding that this action presented issues separate from those subject to arbitration.

Defendant Fieldchoice, LLC.[2] On June 10, 2026, the Brogans and Vanderbilt filed a joint motion notifying that all claims between them had been settled and moved to dismiss. This Court granted the motion on June 11, 2026, dismissed the Brogans' action against Vanderbilt with prejudice, leaving only Vanderbilt's claims against FieldChoice.

Vanderbilt contracted with FieldChoice to provide notary services[3] for the closing of the Brogans' loan for the purchase of a mobile home from Clayton Homes, Inc., in Buckhannon, West Virginia. Vanderbilt and FieldChoice entered into an Outside Counsel/Closing Agents Master Services Agreement, dated November 4, 2021 ("2021 MSA"), which governed the Brogans' closing. The 2021 MSA provides that FieldChoice:

> [S]hall remain responsible for all of its obligations under this Agreement notwithstanding any subcontracting or delegation of the performance of such obligations. [FieldChoice] shall ensure that any third party performing Services under this Agreement on [FieldChoice's] behalf complies with all of [FieldChoice's] obligations hereunder. . . . [FieldChoice's] use of third party venders to provide all or portions of the Services. . . shall in no way diminish [FieldChoice's] representations, warranties, and indemnities furnished to [Vanderbilt], or [Vanderbilt's] remedies outlined under this Agreement. Performance of the Services by such third parties shall be deemed performance by [FieldChoice] and it shall remain fully responsible for the performance or non-performance of each such third party service provider, to the same extent as if [FieldChoice] had directly performed or not performed under this Agreement, and [Vanderbilt] shall be entitled to look solely to [FieldChoice] for satisfaction of any Claims [Vanderbilt] may have arising out of Services provided in whole or in party by such third party(ies).

[2] After the parties filed their motions for summary judgment, this Court granted Vanderbilt's motion for leave to file an amended third-party complaint, which includes the following claims: Count I – Breach of Contract – Obligation to Defend Against Third-Party Defendant FieldChoice, LLC, Count II – Breach of Contract – Closing Deficiencies Against Third-Party Defendant FieldChoice, LLC, and Count III – Negligence – Closing Deficiencies Against Third-Party Defendant FieldChoice, LLC.

[3] The Court notes that there appears to be a dispute as to whether FieldChoice was contracted to provide closing services in addition to notary services.

(Document 79-1 at 5-6.) The 2021 MSA also included a non-exclusivity clause, which provided that "[n]othing in this Agreement or any other Agreement is intended, or should be construed, to . . . prohibit Clayton from providing to and for itself using Clayton's own Employees or otherwise, any goods or services that are the same or similar to or different from all or any of the Services provided under this Agreement." (*Id.* at 5.)

The 2021 MSA included a defend and indemnity clause, which states:

> 13. Indemnification
>
> (a) [FieldChoice] shall defend, with counsel subject to [Vanderbilt's] approval, not to be unreasonably withheld, indemnify, save and hold harmless [Vanderbilt] from and for all third-party Claims or Damages arising out of (i) any alleged defect in material workmanship in performance of the Services; (ii) the breach of any material provision of this Agreement; (iii) the violation of any Applicable Law by [FieldChoice]; (iv) the actions or negligence of [FieldChoice] or [FieldChoice's] Representatives.

(*Id.* at 4.)

The term "Claim" is defined as "[a]ny claim, demand, action, suit, proceeding, settlement, or allegation brought against [Vanderbilt]." (*Id.* at 1.) The agreement further defined "Damages" as:

> [a]ny and all out-of-pocket costs, expenses, liabilities, losses, consequential, incidental and special damages, fines, penalties, forfeitures, judgments, court costs, and reasonable attorney's fees incurred by [Vanderbilt], including without limitation, any of the foregoing arising out of actions for negligence, wantonness, personal injury, injury to property, mental anguish, breach of contract (express or implied), unjust enrichment, injury to intellectual property, and/or invasion or loss of privacy.

(*Id.*) The term "Services" is defined as "[t]he services provided by or on behalf of [Fieldchoice] including without limitation all professional, management, licensing, maintenance, outsourcing labor and general services." (*Id.* at 2.) The term "Representative" is defined as "[a]n individual or entity authorized to perform Services on behalf of [Fieldchoice], including an independent contractor or subcontractor." (*Id.*)

FieldChoice subcontracted with Mr. Elbon to fulfill its services for the Brogans' loan closing held on August 1, 2022. Mr. Elbon was provided with Closing Instructions from Vanderbilt for the closing.[4] In their amended complaint, the Brogans alleged that Mr. Elbon was a notary and referred to him as the "Closing Agent." (Am. Compl. at ¶ 5.) They alleged he was not an independent notary, but a former sales agent who had worked over twenty years for Clayton, the parent company of Defendant Vanderbilt and the seller. They further alleged the closing was not conducted by FieldChoice nor Mr. Elbon,[5] but rather, the Clayton lot manager, Tom Young, alleging that it was Mr. "Elbon's practice. . . to allow Clayton employees to conduct all of the closings at the Buckhannon Clayton lot." (*Id.* at ¶ 28.) The Brogans also alleged the lot manager presented the documents on a screen that made it difficult for the Plaintiffs to view the details and

[4] The Closing Instructions required him to "facilitate the execution of all Lender documents for this loan closing," to ensure that "[e]mployees of the Retailer [did] not notarize or witness any Lender documents," ensure that "[a]ll documents [are] signed in blue ink and signed exactly as the buyer/borrower(s)' names appear on the package," to review the documents prior to closing, to "not use the buyer/borrower(s)' digital signature to prepare any loan documents in advance to help expedite the closing," to ensure that "NO ONE OTHER THAN THE BORROWER. . . COMPLETE[S] THE DIGITAL SIGNATURE PROCESS ON THEIR BEHALF," to "be present during the entire closing and verify the buyer/borrower(s)'. . . identity(ies)," to "execute the entirety of the closing documents," to decline to notarize the signatures of related parties, and to "decline to notarize in any transaction that would impugn, compromise or call into question the notary's impartiality or propriety, or has the potential for doing so." (Document 99-1 at 36.)

[5] The Brogans alleged that Mr. Elbon's "role at the closing consisted primarily of repeated reassurances to the Plaintiffs that they were getting a great deal and the benefits of dealing with Vanderbilt, and only secondarily of notarizing the certificate of title, power of attorney and other hand signed documents in the transaction." (Am. Compl. at ¶ 29.) They further alleged that "[h]e played no role with the Note, Disclosure Statement and core essential transaction documents to which electronic signatures were later attached." (*Id.*)

they were not "afforded the opportunity to [learn and] understand the essential terms" due to the process being rushed. (*Id.* at ¶ 29.) They alleged they were never provided any "copies of the transaction documents and disclosures to which their electronic signatures were attached," nor were they provided details to keep and review prior to the execution including the total sales price, the cash price, and the APR. (*Id.* at ¶ 33.) The Brogans further alleged that the transaction details, including the total sale price, were unknown and not understood by them "due to the manner which the closing was conducted." (Id. at ¶ 31.) The Brogans asserted claims of unconscionable inducement, forgery, and two counts of fraud against Vanderbilt, in addition to claims against Mr. Elbon.

After the Brogans filed suit, Vanderbilt tendered two letters to FieldChoice, demanding that FieldChoice "[a]cknowledge and confirm in writing its contractual obligation to fully defend and indemnify [Vanderbilt] in this lawsuit as it relates to claims surrounding the closing documents and the closing itself," "[a]range for counsel to promptly assume the defense of [Vanderbilt] in this case as it relates to all claims covered by the Agreement, and reimburse [Vanderbilt] for any expenses incurred to date to defend the claims related to the closing." (Documents 106-11 and 106-12.) Vanderbilt moves for partial summary judgment on its breach of contract claim related to a duty to defend and FieldChoice moves for summary judgment on that claim and Vanderbilt's negligence claim.[6]

---

[6] Given that the motions for summary judgment were filed prior to this Court granting leave to file the amended third-party complaint, they do not involve Vanderbilt's additional breach of contract claim. FieldChoice also moved for summary judgment on Vanderbilt's declaratory judgment claim but given that Vanderbilt removed that claim in its amended third-party complaint, the Court does not address it.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No. 11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214

(4th Cir. 1985)). Notably, "a plaintiff cannot rely on an unverified complaint" because an "unsworn argument does not constitute evidence" for summary judgment purposes. *Askins v. Belissary*, No. 4:12-cv-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), *aff'd*, 564 F. App'x 46 (4th Cir. 2014); *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (unpublished decision).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)

(internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

### *A. Breach of Contract Claim – Duty to Defend*

FieldChoice asserts that it is entitled to summary judgment on Vanderbilt's breach of contract claim related to the duty to defend and indemnify. It argues that under Tennessee law, indemnity provisions are unenforceable as a matter of public policy as it relates to claims of fraud, gross negligence, willful conduct and recklessness, and that as a result, it did not have a duty to defend Vanderbilt against the Brogans' unconscionable inducement, forgery, and fraud claims. It further argues that "[e]ven if that is not the case, the 2021 MSA does not contain clear and unequivocal language that FieldChoice must indemnify [Vanderbilt] for [Vanderbilt's] own conduct," nor does it contain clear and unequivocal language that Vanderbilt "would be indemnified for. . . any concurrent negligent conduct." (FieldChoice Mem. at 14-15.) It asserts the 2021 MSA "expressly limits the obligation to defend or indemnification to claims regarding the Vendor's – here, FieldChoice's – actions or negligence." (FieldChoice Resp. at 7.) It contends that the Brogans' complaint and amended complaint asserted separate claims against Vanderbilt for its own conduct, specifically related to the application and underwriting process, including the forging of electronic signatures, which occurred prior to FieldChoice's or Mr. Elbon's involvement. It contends that Vanderbilt requested Mr. Elbon as the notary for the Brogans' closing, and that "any purported allegations against [Vanderbilt] arising out of Elbon's conduct are tainted with Vanderbilt's own conduct and choices." (FieldChoice Mem. at 15.) FieldChoice asserts that Vanderbilt "seeks to apply the wrong standard with regard to the duty to

defend and indemnify under a contractual indemnity provision." (FieldChoice Resp. at 4.) It further asserts that Vanderbilt cites cases that are inapplicable given that they involve an insurer-insured relationship.

Vanderbilt asserts it is entitled to summary judgment on the breach of contract claim, arguing that FieldChoice had a duty to defend it against the Brogans' claims. Specifically, it argues the 2021 MSA required FieldChoice to defend it "'from and for all third-party Claims or Damages arising out of' inter alia '(i) any alleged defect in material or workmanship in performance of Services,'" and that the term "'Claim' is defined broadly as '[a]ny claim, demand, action, suit, proceeding, settlement, or allegation brought against [Vanderbilt].'" (Vanderbilt Mem. in Opp'n at 13, quoting Sub-Exhibit 1-A.) It argues "[t]he Brogans' claims arise out of Elbon's—and thus Fieldchoice's—alleged failure to follow. . . [the] Closing Instructions," and that failure to follow such instructions "constitute[s] a 'defect in. . . workmanship in the performance of the Services.'" (Vanderbilt Mem. at 15-16.) It contends "the merits of the Brogans' claims against Fieldchoice or Elbon have no relevance to whether the allegations of the Brogans' claims against [Vanderbilt] triggered Fieldchoice's contractual duty to defend." (*Id.* at 17.) It further contends that "[b]ecause the duty to defend attached at the outset of this proceeding and was breached when Fieldchoice refused to defend, the presence of other allegations against [Vanderbilt] does not relieve Fieldchoice of its liability under the MSAs." (*Id.* at 20.) Vanderbilt asserts that FieldChoice's arguments related to indemnification are a red herring because it did not bring a breach of contract claim based on a duty to indemnify but rather a duty to defend. It argues that even if the same standards for indemnification applied to the duty to defend, it would still prevail given that it tendered the defense only to the extent the underlying lawsuit related to the

closing documents and closing, and given that it did not have any employees present at the closing, the claims against it "based on allegations of closing misconduct necessarily, and exclusively, arose from Elbon and Fieldchoice's conduct." (Vanderbilt Mem. in Opp'n At 17.) The parties agree that Tennessee law governs the contract.[7]

Under Tennessee law, to establish a breach of contract, a plaintiff must "prov[e] (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *Builders Mut. Ins. Co. v. GCC Constr.*, LLC, 711 F.Supp.3d 899, 932 (E.D. Tenn. 2024) (quoting *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006)). Vanderbilt asserts FieldChoice breached its duty to defend under the defend and indemnity clause of the 2021 MSA, arguing that the Brogans' allegations against it triggered the duty to defend given that they involved alleged defects in FieldChoice's performance of the Services.

The 2021 MSA provides:

> 13. Indemnification
>
> (a) [FieldChoice] shall defend, with counsel subject to [Vanderbilt's] approval, not to be unreasonably withheld, indemnify, save and hold harmless [Vanderbilt] from and for all third-party Claims or Damages arising out of (i) any alleged defect in material or workmanship in performance of the Services; (ii) the breach of any material provision of this Agreement; (iii) the violation of any Applicable Law by [FieldChoice]; (iv) the actions or negligence of [FieldChoice] or [FieldChoice's] Representatives.

(Document 79-1 at 4.)

[7] The 2021 MSA contains a choice of law clause, which provides the "Agreement, its validity, construction and effect shall be governed by the laws of the United States and, to the extent not inconsistent therewith, the laws of the State of Tennessee, excluding its conflicts of law rules." (Document 79-1 at 6.)

"Questions involving. . . [a] duty to defend require the interpretation of the [contract] in light of claims asserted against" the defendant in the underlying action. *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999). Such questions are questions of law and may be resolved on a motion for summary judgment so long as the relevant facts are not in dispute. *Standard Fire Ins. Co. v. Chester O'Donley & Assocs.*, Inc., 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998). Although the parties do not dispute that the term "Services" encompasses notary services, the parties appear to dispute whether that term also encompasses closing services.

Before the Court can address whether the Brogans' allegations against Vanderbilt are covered by the defend and indemnity clause,[8] the Court must first determine the scope of the "Services"[9] that Vanderbilt contracted with FieldChoice to provide under the 2021 MSA. When interpreting a contract, the Court must "ascertain and give effect to the intent of the parties." *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). The parties' intent is determined "by examining the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Id.* (quoting *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011)). "The literal meaning of the contract language controls if the language is clear and unambiguous." *Id.* A contract is considered as a whole when determining whether an ambiguity exists. *Morsey Constructors LLC v. JMN Rebar LLC*, 448 F.Supp.3d 812, 816 (M.D. Tenn.

[8] Given that Vanderbilt's duty to defend theory depends solely upon the "alleged defect[s] in the material and workmanship in performance of the Services" at the Brogans' closing, (Document 79-1 at 4), the Court does not address whether the other aspects of the defend and indemnity clause would have been triggered by the Brogans' allegations.

[9] Because much of the Brogans' allegations relate to how the closing was conducted, ascertaining the scope of the term "Services" is necessary because determining whether any of those allegations constitute "alleged defect[s] in material or workmanship in performance of the Services" will depend on whether FieldChoice was contracted to provide closing services in addition to notary services. (Document 79-1 at 4.)

2020). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Id.* (quoting *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 368 F.3d 894, 897-98 (6th Cir. 2004)). "A strained construction may not be placed on the language used to find ambiguity where none exists. . . [n]or is a contract rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions." *Id.* (quoting *Baptist Physician Hosp.*, 368 F.3d at 897-98) (internal quotation marks omitted).

"When the Court determines that 'the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the court[] must resort to other rules of construction." *Burka v. Vanderbilt Univ. Med. Ctr.*, 550 F.Supp.3d 530, 541 (M.D. Tenn. 2021) (quoting *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002)). "If the pertinent rules of construction do not resolve the ambiguity, then the legal meaning of the contract becomes a question of fact." *Id.* at 542 (citing *Planters Gin Co.*, 78 S.W.3d at 890); *see also Denton v. Allenbrooke Nursing and Rehab. Ctr., LLC*, 495 F.Supp.3d 601, 612 (W.D. Tenn. 2020) (explaining that "[i]f the contract is ambiguous . . . the court may 'look beyond the four corners of the document and consider extrinsic evidence in order to determine the parties' intention'") (quoting *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009)).

Although the 2021 MSA defines "Services" as "[t]he services provided by or on behalf of [FieldChoice] including without limitation all professional, management, licensing, maintenance, outsourcing, labor and general services," (Document 79-1 at 2), it does not define whether "Services" encompasses closing services or only notary services. Because the 2021 MSA is silent

as to whether those services are encompassed by the term "Services," that term is ambiguous, and therefore, the Court must look beyond the 2021 MSA to determine the scope of that term.

Upon review of the current record, the Court is unable to determine whether the term "Services" encompasses closing services. On the one hand, there are indications that the term "Services" includes only notary services given that FieldChoice asserts that it contracted to provide only notary services, and there is a prior agreement between the parties outlining notary services as the services provided by FieldChoice. (Document 105-1); (Document 106-4 at 5, 13:13-15.) On the other hand, there are also indications that FieldChoice may have been contracted to provide closing services in addition to notary services. Specifically, during a deposition of Theodore Trapp, counsel for Vanderbilt presented a document notarized by Mr. Elbon and signed by the Brogans during the closing that stated "[i]n consideration of CMH Homes entering into the Purchase Agreement or Vanderbilt providing this financial accommodation to the undersigned, the undersigned hereby authorizes and appoints FIELDCHOICE LLC CHATTEL, the settlement agent responsible for affecting the closing of the Transaction, and Vanderbilt. . . as lawful attorney in fact." (Document 106-4 at 6, 16:8-15.) Thus, there is a dispute of material fact as it relates to whether the term "Services" included closing services under the 2021 MSA. Because resolution of that dispute is necessary in determining whether the Brogans allegations trigged FieldChoice's duty to defend, the Court finds the motions for summary judgment on the breach of contract claim should be denied.[10]

[10] To the extent Vanderbilt asserts the Brogans' allegations relate to Mr. Elbon's failure to follow the Closing Instructions, the Court finds that it is only able to make a determination as to some of the requirements contained in the Closing Instructions. Although the allegations related to Mr. Elbon's lack of independence would constitute a violation of the Closing Instructions given that Mr. Elbon's lack of independence would "call into question [his] impartiality," (Document 99-1 at 36), such violation did not trigger FieldChoice's duty to defend since it does not constitute an "alleged defect in *material* or *workmanship* in performance of Services," regardless of the services that Mr. Elbon provided. (Document 79-1 at 4) (emphasis added.) In addition, and as discussed further below, the Court

*B. Negligence Claim*

FieldChoice asserts that Vanderbilt's negligence claim is barred by the gist of the action doctrine. It argues that the duties in furnishing notary services "arise[] solely from the contractual relationship between [Vanderbilt] and Fieldchoice," and that "a breach thereof is grounded in the contract itself." (FieldChoice Mem. at 17.) It further asserts that even if the gist of the action doctrine does not apply, it or Mr. Elbon cannot be held liable for a breach of a duty that they never had, pointing to Vanderbilt's discovery evidence not establishing a breach of any duty and this Court's determination that no such breach existed. It argues that like the Brogans' negligence claim against Mr. Elbon, Vanderbilt's negligence claim must also fail. It further argues that Vanderbilt cannot establish the remaining elements of a negligence claim even if there was a duty.

Vanderbilt asserts there are disputes of material fact that preclude summary judgment on its negligence claim. It argues that it entrusted FieldChoice to conduct the Brogans' closing and gave it express closing instructions to follow, and that its failure to conduct reasonable care in conducting the closing would result in foreseeable harm, such as the borrower asserting claims against it. It further argues the harms materialized in this case and that it "was forced to defend and ultimately settle at a substantial cost." (Vanderbilt Mem. in Opp'n at 18.) Vanderbilt contends that although this Court ruled that Mr. Elbon owed no duty to the Brogans, that ruling

---

finds that it does not appear Mr. Elbon violated the Closing Instructions by permitting Mr. Young to conduct the closing. However, the Court finds it is unable, at this time, until it has had the opportunity to review more factual information surrounding the closing, to determine whether the allegations involved violations of the remaining requirements in the Closing Instructions. For example, there appears to also be a dispute as to whether the allegations related to the forged documents involved documents that were electronically signed during the closing, and the Court only has access to a limited number of electronically signed documents that were signed *prior* to the closing. Until the Court is able to review all the electronically signed documents, including any that were signed at the closing, it is unable to determine whether the allegations related to the forged documents involved documents that were signed at the closing. Moreover, resolution of other factual issues, such as the issue related to the term "Services," will put the Court in a better position to determine which allegations, if any, relate to any other requirements contained in the Closing Instructions.

did not "address whether Fieldchoice and Elbon owed such duties to" Vanderbilt. (*Id.*) It further contends that "[e]ven if Elbon did not owe a common law duty to the Brogans, Fieldchoice assumed a duty to [Vanderbilt] to conduct the closing with reasonable care by undertaking to perform closing services pursuant to [Vanderbilt's] express Closing Instructions." (*Id.*) Vanderbilt asserts that as it relates to FieldChoice's assertions related to the gist of the action doctrine, it cannot have it both ways because either the contract imposes obligations on FieldChoice to follow the Closing Instructions, in which case the breach of contract claim would be most appropriate, or the contract imposes no such obligation, in which case the negligence claim is not barred by the gist of the action doctrine. Regarding FieldChoice's contention that there is no factual evidence establishing Mr. Elbon breached any duties during the Brogans' closing, Vanderbilt asserts that such contention is incorrect because the Brogans' interrogatories are evidence that Mr. Elbon failed to follow its Closing Instructions and did not exercise reasonable care.

The gist of the action doctrine bars tort claims that are based on a breach of contract. *See Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013). To maintain a tort claim, such a claim must "arise[] from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than a mere omission to perform a contract obligation." Syl. Pt. 9, *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619 (W. Va. 2002); *see also CIT Bank, N.A. v. Coffman*, 904 S.E.2d 466, 479 (W. Va. Ct. App. 2024) (explaining that "[w]hether a special relationship exists between the parties is also relevant as to whether the gist of the action doctrine applies"). Simply put, "the action in tort [must] arise independent of the existence of the contract." Syl. Pt. 9, *Lockhart*, 567 S.E.2d 619 (W. Va. 2002);

*see also Cochran v. Appalachian Power Co.*, 246 S.E.2d 624, 628 (W. Va. 1978) ("If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or non-feasance, it is, in substance, an action on the contract, whatever may be the form of the pleading").

Under the gist of the action doctrine, tort claims are barred if any of the following factors are present:

> (1) where liability arises solely form the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy*, 746 S.E.2d at 577.

The Court finds Vanderbilt's negligence claim is barred by the gist of the action doctrine. As this Court previously determined in its *Memorandum Opinion and Order* (Document 90) ruling on Mr. Elbon's motion to dismiss, West Virginia has not recognized a duty for a notary or a closing agent "to conduct [a] closing in a reasonably prudent and impartial manner." (Document 90 at 13.) Additionally, the duties Vanderbilt asserts were owed by FieldChoice are grounded in the Closing Instructions, which the parties agree is an enforceable contract.[11] (Document 99-1 at 36.) Accordingly, FieldChoice is entitled to summary judgment on the negligence claim.

[11] Vanderbilt asserts FieldChoice had a duty to facilitate the execution of the lending documents, to prevent retailer employees from conducting the closing, to ensure borrower completion of the digital signature process, and to decline to conduct a closing under circumstances that call into question the notary's impartiality. Such duties are the same or similar requirements contained in the Closing Instructions, including the requirements to "facilitate the execution of all Lender documents for this loan closing," to ensure that no one other than the borrower complete the digital signature process on their behalf, and that the notary "decline to notarize in any transaction that would impugn, compromise or call into question the notary's impartiality or propriety, or has the potential for doing so." (Document 99-1 at 36.) Although it appears that the duty to prevent retailer employees from conducting the closing was not a requirement in the Closing Instructions, given that the instructions only prohibited retailer employees from "notariz[ing] or witness[ing] any lender documents," there is no indication that West Virginia law recognizes such a

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Vanderbilt Mortgage and Finance, Inc's Motion for Partial Summary Judgment Against FieldChoice, LLC* (Document 101) be **DENIED**, and that *FieldChoice's Motion for Summary Judgment* (Document 104) be **GRANTED** as it relates to Vanderbilt's negligence claim but **DENIED** as to the breach of contract claim related to a duty to defend.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 5, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

duty. (*Id.*) Moreover, the 2021 MSA provides that "[n]othing in this Agreement or any other Agreement is intended, or should be construed to. . . prohibit Clayton from providing to and for itself, using Clayton's own Employees or otherwise, any goods or services that are the same or similar to or different from all or any of the Services provided under this Agreement." (Document 79-1 at 5.)